

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Department of Agriculture
Austin, Texas

Gentlemen:                    ATTENTION:  Mr. Charles E. Baughman

Opinion No. O-2909
Re:  (a)  Whether inspection and
          marking provisions of Texas
          Citrus Marketing Act and reg-
          ulations thereunder are appli-
          cable to grower handling own
          fruit; (b)  authority of grower
          to hire agent to transport fruit
          to market; (c) authority of Com-
          missioner summarily to halt
          traffic.

        This will acknowledge receipt of your letter of
November 18, 1940, requesting an opinion of this department.

        You state that:

        "A grower of citrus fruit within the Citrus
Area as defined in House Bill 553, Chapter 350
of the Acts of the 42nd Legislature, Regular Session,
picked 25 sacks of grapefruit from his own trees.
He secured a Master Permit under Federal Quarantine
regulations on the declaration that he was trans-
porting the fruit to Corpus Christi, Texas, within
the Citrus Area.  He secured a Certificate of Matur-
ity covering the grove from which the fruit was de-
clared to have been harvested.  The Grower in ques-
tion failed to comply with Sec. 8 of House Bill 625,
Acts of the Regular Session of the 43rd Legislature,
1933, which requires persons offering commercial quanti-
ties of citrus fruit for 'shipment' within the area
affected by the Act to give 'due and timely notice of
time of shipment in order that an inspector may be
provided to make the necessary inspection.'  The
Grower in question further failed to comply with the
Commissioner's Regulation Number Twelve of the Rules
and Regulations relating to marking and packing for
shipment.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Department of Agriculture, Page 2

"It is the contention of the Grower that Section
Fifteen of the Act, captioned "Sale without Grading
By Grower Permitted,' relieves him of the nec-
essity of compliance with either the inspection
requirement of the Act, or the marking require-
ment of the Regulation.

"Presuming that, as in the above instance,
a grower of citrus fruit picks fruit from his own
grove in commercial quantities as defined by the
Act, packs the same in his own containers, com-
plies with quarantine and maturity requirements
in all particulars and transports said fruit in
his own truck to market, you are respectfully re-
quested to advise us as to the following:

"1. Are the inspection requirements of Section
Eight of the Act applicable to the statement of
facts above set out, if market destination is within
the citrus area?

"2. Presuming that the market destination is
beyond the boundary of the Citrus Area, would the
inspection requirements of Section Eight of the
Act be enforceable?

"3. Are the marking requirements of Regulation
Number Twelve applicable in the instances set out
above?

"4. Presuming that the facts with relation to
the ownership, etc. of the fruit in question are
as above stated, then, and in that event, could
the grower hire any person to act as his agent in
the transportation of his fruit to market, within
or without the citrus area as defined in the Act?

"5. I would like also to know if the Commissioner
of Agriculture has authority to stop traffic for the
specific purpose of determining whether or not the
citrus inspection law has been complied with."

Sections 7, 8, 9, 10 and 15, of Article 118a, Ver-
non's Annotated Civil Statutes, Acts 1933, Forty-third Leg-
islature, page 550, Chapter 180, as amended, Acts 1935,
Forty-fourth Legislature, Page 556, Chapter 238 read as follows:

Department of Agriculture, Page 3

"Sec. 7.  Whenever any grades or classifications and standards for citrus fruit become effective under this Act, no person thereafter shall pack for sale, offer for sale, consign for sale, or sell, except as provided in this Act, any such described citrus fruit grown within the State of Texas, to which such grades or classifications and standards are applicable unless such citrus fruits conform with such grades or classifications and standards."

"Sec. 8.  It shall be the duty of every person, firm, corporation, association, or other organization affected by this Act to give due and timely notice to the Commissioner, his agents, inspectors and employees as to the time and place of the loading of citrus fruits subject to the provisions of this Act, or to report to the inspection station nearest to the point of loading.  The terms 'to ship', 'shipper,' and 'shipment' as noted in this Act shall apply to the transportation of citrus fruit by an automobile, truck, trailer, or any other vehicle, as well as the transportation by rail and/or water."

"Sec. 9.  Whenever grades or classifications become effective under this Act, it shall be unlawful for any person, firm, corporation, association or other organization to ship any citrus fruits to which such grades or classifications are applicable (except as provided in Section 15 hereof) unless such citrus fruits have first been inspected by a duly authorized inspector who shall issue a certificate of inspection showing the grade, or other classification thereof, and unless such fruit be packed in containers approved by the Commissioner of Agriculture and fruit in each container must be uniformly sized."

"Sec. 10.  A certificate designating the classification of the grade or grades of citrus fruits so subject to compulsory inspection under this Act or other form evidencing that the official inspection has been made shall be issued by the inspector and delivered to the shipper.  A certificate so issued under this Act shall be accepted in any Court of this State as prima facie evidence of the true grade or classifications of such citrus fruit at the time of inspection."

Department of Agriculture, Page 4

"Sec. 15. No provision of this Act shall be construed to prevent a grower of citrus fruits within the area affected by this Act from selling or delivering the same unpacked and unmarked, or selling his crop in bulk, or any part thereof, or to a packer for grading, packing or storage within said area. Nor shall any provision of this Act prevent a grower or packer from manufacturing the same into any by-product or from selling the same unpacked or unmarked to any person actually engaged in the operation of a commercial by-products factory for the sole and express purpose of being used in the said area for the manufacture of a by-product for resale. The terms of this Act shall not be applied to any number of containers less than six (6), such a number is regarded as non-commercial and not subject to provisions of this Act." (Underscoring ours)

Regulation No. 12 of the Commissioner of Agriculture reads as follows:

"REGULATION NO. 12. No handler shall pack or ship any grapefruit unless said fruit is marked as follows:

"a. Any lot of fruit below the requirements of U. S. No. 3 Grade shall be clearly and indelibly branded, stamped or printed with the word 'CULL' on the rind of each fruit in letters not less than three-eighths (3/8) of an inch high.

"b. Any lot of fruit below the requirements of U. S. No. 2 Grade of Classification of this grade, but meeting the requirements of U. S. No. 3 Grade shall be clearly and indelibly branded, stamped or printed with the words 'THIRD GRADE' on the rind of each fruit. in letters not less than three-sixteenths (3/16) of an inch high.

"c. Any lot of fruit branded, stamped or printed, 'Third Grade' of 'CULL' as required in this regulation, shall show no other mark.

"d. Any lot of fruit which shows at least seventy-five (75%) per cent of the fruit in individual containers clearly marked according to the above designations shall be deemed as complying with these regulations.

> In order to allow for variations incident to proper grading and handling, not more than ten (10%) per cent by count of the fruit in any container may be below the percentage required to be clearly marked, provided the lot as a whole averages seventy-five (75%) per cent or more."

Section 7, of Article 118a, provides that citrus fruit shall not be sold, offered or consigned for sale unless it conforms to the applicable grades or standards and classifications. The purpose of Section 7 is to facilitate inspection by making it the duty of every person to give due and timely notice to the Commissioner of Agriculture as to the time and place of the loading of citrus fruit for shipment in order that Section 9 may be more readily complied with.

Section 9 of the Article 118a makes it unlawful for any person to ship citrus fruit without the prerequisite inspection to determine (1) the grade or other classification of the fruit; and (2) whether the fruit is uniformly sized, and packed in containers approved by the Commissioner of Agriculture. Section 15, however, is a limitation upon Section 9 and related Sections 7 and 8.

As provided in Section 15, a grower within the citrus area may sell or deliver his fruit unpacked or unmarked, in bulk, or partly in bulk, to anyone, within the area, or to a packer for grading, storage or packing, within the area.

From a careful study of these provisions of the Act it is our opinion and you are advised that insofar as the first sale or delivery by a grower is concerned, whether it be to a packer or to anyone else, within the citrus area, such sale or delivery may be consummated, if the grower so elects, without grading, classifying or packing the fruit. Consequently, insofar as such sale or delivery is concerned neither Sections 7, 8, or 9 of Article 118a nor Regulation 12 will apply.

A different result might follow if, for example, the grower elected to classify or grade the fruit and such fruit were sold or delivered as fruit of a certain classification or grade. As we understand the facts, however, we are dealing with a situation where the grower has elected

Department of Agriculture, Page 6

to take advantage of Section 15 by selling or delivering his own fruit without grading or packing it. This he may do, and it follows that your questions 1 and 3 must be answered in the negative, insofar as sales within the citrus area are concerned.

Insofar as sales to be consummated outside the citrus area are concerned, we believe the inspection requirements of Sections 7, 8, and 9 are applicable. Section 15 provides no exception in such instances.

For clarity we repeat Section 15:

"No provision of this Act shall be construed to prevent a grower of citrus fruits within the area affected by this Act from selling or delivering the same unpacked and unmarked, or selling his crop in bulk, or any part thereof, or to a packer for grading, packing or storage within said area. Nor shall any provision of this Act prevent a grower or packer from manufacturing the same into any byproduct or from selling the same unpacked or unmarked to any person actually engaged in the operation of a commercial by-products factory for the sole and express purpose of being used in the said area for the manufacture of a byproduct for resale. The terms of this Act shall not be applied to any number of containers less than six (6), such a number is regarded as noncommercial and not subject to provisions of this Act." (Underscoring ours)

In order to effectuate the purposes of the act, we must interpret the last phrase, "within said area" as qualifying the entire sentence and not merely the clause of which it is a part. The purpose of the Act was undoubtedly to prevent the peddling of inferior fruit as fruit of a superior quality on an unsuspecting public, to inhance respect for Texas citrus fruit in the eyes of the market. If sale or delivery of citrus fruit may be made by the grower without inspection only to persons within the citrus area, then an inspection of that fruit must be obtained at some time under the Act before it leaves the area; whereas, if the Act

Department of Agriculture, Page 7

were interpreted to permit free sale or delivery by the grower without inspection to anyone without the area, the whole purpose of the Act would be frustrated insofar as growers handling their own fruit was concerned. We believe the former interpretation more consonant with the Legislative intent. Question 2 is accordingly answered in the affirmative, and question 3 in the affirmitive insofar as sales beyond the citrus area are concerned.

Insofar as question No. 4 is concerned we have found nothing that would prohibit a grower, under the facts described in your letter, who elects to take advantage of Section 15, from hiring any person to act as his agent in the transportation of his fruit to market within or without the citrus area. Section 17, of course, makes it the duty of all carriers to see that any shipment of fruit is accompanied by a duly issued certificate of inspection in cases where such inspection is necessary.

Your final question (No. 5) is a general one as to the authority of the Commissioner of Agriculture to halt traffic for the specific purpose of determining whether the inspection provisions of the Citrus Marketing Act have been complied with. We have carefully examined the Act and have been able to find no such authority.

While Section 2 provides that inspection of all citrus fruits shall be under the direction of the Commissioner of Agriculture, Section 8 makes it the duty of all persons (insofar as fruit subject to inspection is concerned) to give due notice of the time and place of loading for shipment in order that an inspection may be there obtained. In addition, Section 17 makes it unlawful for any shipper, forwarding company, private, contract, or common carrier to ship, transport or accept for shipment any citrus fruit required to be inspected unless accompanied by a duly issued certificate of inspection. Nowhere in the Act is the Commissioner given authority to arrest without warrent or conduct a summary search and seizure to determine whether the inspection requirements have been complied with. Your fifth question must accordingly be answered in the negative and to the effect that the Commissioner has no authority summarily to halt traffic.

APPROVED JAN 2, 1941

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

JDS:js
ew

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *James D. Smullen*

James D. Smullen
Assistant

APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN